IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CRIM. NO.: 10-cr-0001 |
| v. | ) |
| | ) |
| JULIAN GORDON, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

Finch, Senior Judge

 THIS MATTER comes before the Court on the Motion to Suppress filed by Defendant Julian Gordon ("Defendant" or "Gordon"). Defendant seeks to suppress evidence obtained by police when they searched his vehicle. Defendant asserts that the police lacked reasonable suspicion to detain him and lacked probable cause to search his vehicle. Defendant also asserts that he did not consent to a search of his vehicle. A hearing on the matter was held on April 22, 2010. For the reasons that follow, Defendant's Motion to Suppress will be GRANTED.

 I. Background

 The following factual findings are based on witness testimony given at the Motion to Suppress Hearing held on April 22, 2010 as well as by exhibits entered into evidence. Deputy Chief Christopher Howell and Officer Cynthia Francis of the Virgin Islands Police Department testified on behalf of the Government. Defendant Julian Gordon testified on his own behalf.

On December 27, 2009 at approximately 10:00 p.m., officers from the Virgin Islands Police Department ("VIPD") and agents from the High Intensity Drug Trafficking Area Task Force ("HIDTA") were performing a street level drug enforcement initiative in the vicinity of St. Joseph High School in Frederiksted, St Croix. (Grand Jury Test. 2-3.) While patrolling the area, Deputy Chief Christopher Howell ("Howell"), an 18-year veteran of the VIPD passed by Consumer's Gas Station. (Mot. to Supp. H'rg.) The VIPD were aware that there had been several complaints about drug-dealing and seizures of drugs in that area in recent months. (*Id.*) While driving past Consumer's, Howell observed three males sitting along a wall on the western side of the Consumer Gas Station and one of the males was observed rolling what Howell suspected to be a marijuana cigarette. Howell then contacted other officers involved in the initiative, including Officer Francis, and continued to drive to avoid alerting anyone at the gas station to his presence. When Howell drove by the gas station again, he observed a car he had not seen earlier. Howell saw an individual seated in the driver's side of vehicle, with another individual leaning into his window. The seated individual was later identified as Mr. Gordon. Based on the posture of the person leaning into Gordon's window, Howell believed that the two were engaging in a hand-to-hand drug transaction. Howell then circled back and pulled into Consumer's, joining the other patrol units who had come at his request. At that point, Howell observed an individual get up from where he was seated on the wall, walk over to a vehicle (not the one in which Gordon was seated) and put a bag in it. When that individual was approached by police officers and questioned, he denied that the car was his. At some point during questioning, the individual fled on foot and was pursued by several officers, including Officer Francis. Howell pursued the individual in his car but when he caught up with him, the suspect was already in custody. Howell then returned to Consumer's. *(Id.)* Task force members

Cynthia Francis, Darnell Samuel, Aldemar Santos, Sindy Elscoe and VIPD Officer Ralston Wright were at the scene. (Francis Aff.) Howell approached Gordon, who was seated in his car and talking to Cynthia Francis.[1] (Mot. to Supp. Hr'g.)

Howell asked Gordon if he had anything he should not have in the car. Gordon stated that he did not respond to the question. Howell and Francis stated that Gordon said "no." (Mot. to Supp. H'rg; Grand Jury Test. 5.) Howell asked Gordon if he could search the car. Again, Gordon asserts that he did not respond affirmatively.[2] Officer Francis attested in her affidavit that she asked Gordon to exit the vehicle.[3] Gordon did so and was patted down by Officer Ralston. (Francis Aff.) Howell testified that when the door of Gordon's vehicle was opened, Howell saw a plastic bag of marijuana in the door pocket of the car. (Mot. to Supp. H'rg.) Gordon testified that a shammy cloth was covering the marijuana and that this cloth was

---

[1] Francis testified that Gordon was a friend.

[2] Howell testified that Gordon exited the vehicle and gave access. Gordon testified that he did not respond when Howell questioned him.

[3] At the Hearing, Officer Francis stated that Gordon was not ordered to come out of the car. However, that testimony conflicts with the statement made in her affidavit of probable cause, completed on December 28, 2009, the day after the arrest of Gordon, and with the testimony of Gordon, who testified that Francis ordered him out of the car. The affidavit states that "[u]pon arriving at the scene the Affiant approached Gordon and asked him to exit his vehicle, which he complied[sic]. (Francis Aff.) Officer Ralson Wright then patted Gordon down for officers' safety." (*Id*.) The Government also submitted into evidence the Grand Jury testimony of Francis. However, that testimony did not unambiguously state that Gordon was never asked to exit the vehicle. Instead, Francis attested that Gordon was not ordered to come out of the vehicle *before* Howell asked Gordon if he had any contraband in the car. The following excerpt from the Grand Jury transcript is a record of Francis' testimony.

> Q: Okay. And so you approached the vehicle [where Gordon was seated]. What happened next?
> A: We approached the vehicle. As I stated, the individual was still seated inside the vehicle. Deputy Chief Howell engaged in a conversation with the individual and he asked him if he had anything that he should not have had.
> Q: **Before he did that, was defendant - - Mr. Gordon, was he ordered to come out of the vehicle**?
> A: **No**.
> Q: Okay. So what happened next?
> A: So then he told him, he told him, No. So then Deputy Chief Howell asked for consent to search the vehicle, and Mr. Gordon told him, Yes. In the meantime, began [sic] exiting the vehicle. Deputy Chief Howell began to search the vehicle. In seconds, he discovered a plastic bag containing several dime bags of marijuana in the driver pocket door.

(Grand Jury Test.5) (emphasis added.)
At the Hearing, Howell merely testified that he did not himself order Gordon out of the car, and that he thought it was incorrect to state that Francis did. The Court finds the testimony of Francis at the Hearing that Gordon was not ordered out of the car was not credible given her prior statements, the statements of Defendant, and the failure of Howell to directly negate that fact.

3

removed by Howell. (*Id.*) Howell stated that he did not recall the shammy cloth. (*Id.*) Government Exhibit 1 shows a plastic bag, along with a bottle of Windex in the door pocket. Defense Exhibit 1 shows a photograph of the car seat with a shammy cloth on it.[4]

Gordon was then arrested and Howell continued to search the car. In the back seat of the car, inside a plastic bag, Howell found a plastic container of marijuana. (Mot. to Supp. Hr'g.) Howell then contacted forensics, who conducted a more thorough search of the car and uncovered a Smith and Wesson 9 mm. handgun under the driver's seat. (Gov't Ex. 4.)

## II. Discussion

### A. **Seizure pursuant to a Terry Stop**

The Defense argues that the Government did not have a lawful basis to make a stop of Defendant's vehicle. The Government contends that the brief detention of Defendant was a valid Terry investigation for which a warrant was not required.

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). "[A] a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). *See also United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (submission to "a show of authority" establishes a seizure) (citing *California*

---

[4] Officer Francis stated in her Affidavit that "[a] search of the vehicle revealed several dime bags containing suspected marijuana in the door of the driver's side." (Francis Aff.) In her Grand Jury testimony, Francis stated that "Deputy Chief Howell began to search the vehicle. In seconds, he discovered a plastic bag containing several dime bags of marijuana in the driver pocket door." (Grand Jury Test. 5).

v. *Hodari D.*, 499 U.S. 621, 626 (1991)). "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *Brown*, 448 F.3d at 244 (citing *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir.2002). However, an exception to the warrant requirement, established in *Terry v. Ohio*, 392 U.S. 1 (1968), permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Brown*, 448 F.3d at 244 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "[A]pproaching a parked car and questioning the occupant does not necessarily rise to the level of a Terry stop, unless it was objectively reasonable for that person to believe that he was compelled to stay and answer the question." *United States v. Taylor*, 511 F.3d 87, 91 (1st Cir. 2007) (citations and internal quotations omitted). However, a Terry stop occurs once the police ask an individual to exit the vehicle. *Id.* When the officer conducting the stop and frisk relies on information provided by another officer, the government must demonstrate that the officer who transmitted the information to the detaining officer possessed reasonable suspicion to justify the stop. *Brown*, 448 F.3d at 248.

Any evidence obtained pursuant to an investigatory stop that does not meet the requirements of the exception must be suppressed as "fruit of the poisonous tree." *Id.* at 244 (citations omitted). Once a defendant has challenged the admissibility of evidence taken pursuant to the Terry stop, the burden of demonstrating reasonable suspicion rests with the government. *United States v. Coward*, 296 F.3d 176, 180 (3d Cir. 2002) (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir.1995)).

1. **Seizure of Gordon**

The facts indicate that a seizure of Defendant took place when Officer Francis, in the presence of several other officers, asked Defendant to exit his vehicle.[5] The issue then is whether that seizure was a permissible Terry stop.

At the time that Gordon was detained, Gordon was in his car, at approximately 10:00 p.m. at night in a gas station known for drug activity where police had recently apprehended a suspect. Sometime before the arrest of that suspect, Howell had witnessed an individual leaning into the car window of Gordon's car and engaging in what he believed to be a drug transaction. However, Howell was unable to determine whether the individual and Gordon had exchanged anything. Howell also could not identify or provide a description of the individual at Gordon's window, nor could he link that individual to any criminal activity at the gas station. Howell had informed Francis of what he had observed with respect to Gordon's vehicle.

The Court must review the VIPD action in the "totality of the circumstances" to determine whether the detaining officers had a "particularized and objective basis" for his or her suspicion of wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Although each factor alone may be susceptible of innocent explanation, reasonable suspicion is found where the factors taken together suffice to form a particularized and objective basis to conduct an investigatory stop. *Id*. at 278. The court also takes into consideration the fact that an officer's experience and specialized training allows him or her to make "inferences from and deductions

---

[5]Testimony was also given that suggests Gordon was not free to go prior to the encounter with Howell at his car. Howell agreed on cross-examination that prior to stepping out of the car, Gordon likely did not feel free to go given the fact that several police officers were present at Consumer's Gas station conducting a search of the premises. Also, at some point Howell told Gordon that he would get Gordon on his way, indicating that Gordon was not free to go until the police had questioned him. However, for the purposes of this Motion, the Court focuses its attention on the encounter between the officers and Gordon subsequent to the arrest of the man who fled on foot and finds that Defendant was seized when he was asked to step out of the car.

about the cumulative information available to them that might well elude an untrained person." *Id*. (citations and internal quotations omitted).

However, a police officer "must act on more than a mere hunch to meet the reasonable suspicion standard for their stop." *United States v. Mathurin*, 561 F.3d 170, 174 (3d Cir. 2009) (citing *Arvizu*, 534 U.S. at 273-74) (internal quotations omitted)). The factors asserted by a police officer, considered as a whole, "must serve to eliminate a substantial portion of innocent travelers." *Id*. (citing *Karnes v. Skrutski*, 62 F.3d 485, 493 (3d Cir.1995)).

The Court finds that the Government has failed to establish the requisite reasonable suspicion to detain Mr. Gordon. Even viewing all the facts asserted by the police in this matter as a whole, such facts fail "to eliminate a substantial portion of innocent travelers." *Mathurin*, 561 F. 3d at 174 (citing *Karnes,* 62 F.3d at 493).

It is well-established that the presence of an individual in a high-crime area is not sufficient to establish reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime") (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)). Moreover, the VIPD observed no conduct linking Gordon to the other suspect who was apprehended that night. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (a person's mere propinquity to others independently suspected of criminal activity does not, without more, authorize police to search that person) (citing *Sibron v. New York*, 392 U.S. 40, 62-63 (1968)).

While the Government witness Howell testified that he suspected that Gordon was engaged in a drug transaction, the only action he observed was an individual leaning into the car

window of Gordon's car. Howell made this observation after dark and while he was driving, facts which belie Howell's ability to accurately perceive what was occurring. The allegation that a hand-to-hand transaction occurred is a conclusory statement that without more does not suffice to show that an illegal act occurred. In cases where police allegations of hand-to-hand transactions sufficed to establish reasonable suspicion, the officers were able to provide more details supporting the allegation. For example, in *United States v. Lopez,* a case involving police observation of a drug transaction, the court found reasonable suspicion based on the description of the conduct that police believed to be a drug transaction. *United States v. Lopez*, 2009 WL 1140096, at *5 (M.D. Pa. April 28, 2009) (finding that police officers had the requisite reasonable suspicion to conduct a Terry stop of individuals, who, continually surveying the area, made hand-to-hand contact without first shaking hands at nighttime in an area known for drug-trafficking).[6] *See also Pennsylvania v. Dunlap*, 129 S.Ct. 448 (2008) (Roberts, J., and Kennedy, J. dissenting from denial of cert.) (finding that the police officer with drug interdiction experience had probable cause to arrest the defendant when he observed defendant and another man on a street corner in a high crime area make a quick hand-to-hand exchange of cash for small objects); *United States v. Matthews*, 2010 WL 1452617, at *5 (4th Cir. 2010) (investigatory stop was valid where police received tip that a white van was selling drugs on a specified street corner and three detectives surveying the scene observed the suspect exchange a bag for cash in what they believed was a hand-to-hand drug deal). *United States v. Foreman*, 993 F. Supp. 186, 189-90 (S.D.N.Y. 1998) (the police had the authority to stop and arrest an individual identified in the community as a drug dealer when officers observed the individual engage in a hand-to-hand transaction on a street corner, and return to the same street corner

---

[6] The Lopez court noted that "[a] hand-to-hand transaction occurs when individuals meet to exchange contraband in person, often without social formalities." *Id*. at *1. In Lopez, "[t]he officers were trained to recognize hand-to-hand transactions and had observed such transactions on numerous prior occasions." *Id*.

8

hours later and upon leaving make an illegal U-turn).  In any case, Howell did not actually observe any items changing hands or even any contact between the hands of Gordon and the person leaning into his window; he merely assumed that a drug transaction was taking place based on the position of the individual with respect to Gordon's car.[7]

In sum, the fact that an individual leaned into Gordon's car in a gas station where illegal activity is common fails to establish suspicion such that the police could detain Gordon and order him out of his car.  Anyone could have pulled into the gas station for a legitimate purpose at or near the time the police were investigating suspicious conduct.  Gordon testified that he had purchased items at the gas station convenience store. Moreover, it is not an abnormal occurrence in a small community such as this one for individuals to recognize one another in public places and engage in conversation.  In fact, Officer Francis also recognized Gordon and identified him as a friend at the Hearing.

Because the evidence taken from Gordon's car was obtained pursuant to an illegal seizure of Gordon, the evidence "must be suppressed as fruit of the poisonous tree," *Brown*, 448 F.3d at 244, unless the court determines that law enforcement obtained the evidence "by means sufficiently distinguishable to be purged of the primary taint." *United States v. Alvarez-Manzo*, 570 F.3d 1070, 1077 (8th Cir. 2009) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

**B. Consent**

---

[7] In cases where the act of leaning into a window supported a finding of reasonable suspicion of criminal activity, other suspicious conduct was observed.  *See, e.g.*, *United States v. Luqman*, 522 F.3d 613, 617 (6th Cir. 2008) (finding reasonable suspicion that solicitation of prostitution occurred where the officers were patrolling a known prostitution area and observed a woman lean into a truck window and then observed the woman run and the car move away as the police vehicle approached); *United States v. Whitney*, 2008 WL 2048182, at * 4 (D. Del May 9, 2008) (reasonable suspicion found where tip that a car identified by make and plates would pick up drugs at particular location was bolstered by observation of individual leaning on car engaged in conversation with occupant).

9

The Government alleges that Gordon gave consent to the search of his vehicle. "A search conducted pursuant to consent is one of the specifically established exceptions to the search warrant requirement." *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

However, "[c]onsent following an illegal seizure does not in itself purge the taint of the illegality for Fourth Amendment purposes; the government must show sufficient attenuation to causally disconnect the consent from the seizure." *United States v. Mosley*, 454 F.3d 249, 261 n.19 (3d Cir. 2006) (citing *United States v. Snype*, 441 F.3d 119, 133 (2d Cir.2006) (collecting cases)). In determining whether the original taint has been purged, the court looks to three factors elucidated in *Brown v. Illinois*, 422 U.S. 590 (1975): "(1) the temporal proximity between the Fourth Amendment violation and the grant of consent to search; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the officer's Fourth Amendment violation." *Alvarez-Manzo*, 570 F.3d at 1077 (citing *Brown*, 422 U.S. at 603-04). Voluntariness of consent is a threshold requirement. *Snype*, 441 F.3d at 132 (collecting cases).

As a threshold matter, the Court finds that the Government has not established that Gordon gave his consent to the search freely and voluntarily. "[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth*, 412 U.S. at 222 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Voluntariness is a question of fact to be determined from the totality of all of the circumstances. *Id*. at 227. Such factors include "the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual." *Givan*, 320 F.3d at 459 (citing *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096, 1099 (3d Cir.1970)).

The record shows that alleged consent was obtained at night while Defendant was inside or near his vehicle and while several police officers were present at the scene. (Francis Aff.) While Howell and Francis asserted that Gordon gave consent, neither of them attributed a specific statement to Gordon indicating his consent. In fact, Gordon testified that he did not respond when the Howell asked him if he could search his vehicle.[8] Howell testified that Gordon exited the vehicle and gave access. The fact that he stepped out of his vehicle without a struggle and did not specifically object to a search of his car is not unequivocal evidence that he consented to the search. *United States v. Stanack Sales Co.*, 387 F.2d 849, 853 (1968) (citations omitted) (consent to a search must be unequivocal). *See also United States v. Thomas*, 2009 WL 424589, at *8 (D.V.I. Jan. 19, 2009) (the court found that consent was given intelligently, in the absence of duress or coercion, express or implied, and was *unequivocal*, when the individual told police that "you all could check" [my house]) (emphasis added.) *See also Snype*, 441 F.3d at 131 (quoting *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir.1993) (more than "mere acquiescence in a show of authority" is necessary to establish the voluntariness of a consent").

Even if the Government had established voluntary consent, under the *Brown* factors, the Court finds that there was insufficient attenuation between the illegal stop and the consent to validate the search of Gordon's car. First, the temporal proximity of the consent to the illegal search weighs against the purge of the taint because the search took place immediately following Gordon's alleged consent. *See, e.g., United States v. Fox*, 2010 WL 1027609, at *5 (10th Cir. 2010) (citing *United States v. McSwain*, 29 F.3d 558, 563 (10th Cir.1994). Second, there was no

---

[8] The Court finds this testimony credible. The demeanor of the witness showed no "evasiveness" or nervousness" and he gave clear and consistent testimony. *C.F., Lopez*, 2009 WL 1140096, at *1 (finding officers' testimony that a defendant gave consent to search his vehicle more credible because the officers gave consistent and clear testimony and appeared composed on cross-examination, while the defendant appeared evasive and skittish, and meandered in his recollection of events). It is credible and not unlikely in the circumstances of his detainment that he would have refrained from responding to Officer Howell's request to search his car. On the other hand, there were inconsistencies and some lack of clarity in the narrative of events as presented by the Government witnesses.

intervening circumstance breaking the causal connection between the illegal seizure and the consent such as the signing of a consent form, advising Gordon of the right to withhold consent, release from custody, an appearance before a magistrate, or consultation with an attorney. *Fox*, 2010 WL 1027609, at *6 (citations omitted); *see also United States v. Griggs*, 114 F. Supp. 2d 334, 343 (M.D. Pa. 2000) (intervening circumstance found where defendants signed a consent form acknowledging that the police could not conduct the search without a warrant and that they had a right to refuse the request). The third factor, regarding the purpose and flagrancy of the misconduct, also weighs somewhat against admitting the evidence as the illegal stop appeared to be "investigatory in design and purpose and executed in the hope that something might turn up." *Fox*, 2010 WL 1027609, at *6 (citations and internal quotations omitted).

### III. Conclusion

The Government has failed to provide the requisite reasonable suspicion to conduct an investigatory stop of Defendant. The Government also failed to establish that the taint of the illegal stop was purged by consent. First, the Government failed to establish that Gordon gave consent, or that he gave it freely and voluntarily. Moreover, even if consent had been proven, there was insufficient attenuation between the illegal stop and alleged consent to purge the taint of the seizure of Gordon. Therefore, the evidence taken pursuant to that illegal search must be suppressed. A separate Order will be entered stating the same.

**ENTER**:

Dated: April 27, 2010

_____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE